Curia, per
Butler, J.
This is an extension of the principle laid down in the State vs. Rawls, referred to in the decision below, and is calculated, I fear, to give it a mischievous latitude. I shall presently advert to that case for the purpose of showing the material difference between it and the evidence before us.
There should be a liberal indulgence exercised in allowing a witness to refer to any memorandum, for the puppose of refreshing his memory, as to distinct facts not contained in the paper itself. In this way, the paper would be a mere aid to restore the recollection of other facts. Where the paper itself contains a state of facts, to which the witness is called to depose, in some cases the witness may be unable to recollect the facts themselves, but may say that the facts were true at the time they were inserted in the paper — not that such writing itself will always be admissible, but it must be introduced, that both parties may have a full opportunity to examine and cross examine, as to all the particulars contained in such paper. Greenleaf, 484. But there must be some limitation as to the time when the writing thus used to excite the recollection of facts, should be made. The general remark by law writers is, that the writing must have been made at the time of the fact in question, or recently afterwards. Perhaps no general rule can be laid down ; but thus much may be said, that the paper should contain not only what the writer was conscious of at the time the matter was noted, but should be one emanating from the witness him *237 self, or made out under his immediate direction and of his own free will and accord. Where a witness had herself noted down the transactions from time to time as they occurred, but had requested the plaintiff’s solicitor to digest her notes into the form of a deposition, which she had af-terwards revised, corrected and transcribed, Lord Chancellor Hardwick suppressed the deposition, with strong expressions of indignation. The language of the Lord Chan, may not be uninstructive as to the principle we have under consideration. The case is quoted in 3d T. R. 753; “should the court connive at such proceedings as these, depositions would be really no belter than affidavits.” To be sure, he continued to say, “ a man may use papers at law in some cases, but I have known some judges (and I think I adhered chiefly to that rule myself) let them use only papers drawn up as the facts happened, and all other papers I have bid them put in their pockets ; and if any had been offered which had been drawn up by an attorney, I should have repremanded him severely.” Prof. Greenleaf quotes with approbation the law on this subject, as it is understood to exist in Scotland. The rule in the courts of that country is, that notes or memoranda, made up by the witness at the moment, or recently after the fact, may be looked to in order to refresh the memory; but if they were made up at the distance of weeks or months thereafter, and still more, if done at the recommendation of one of the parties, they are not admissible. Under this view of the law vindicating itself by its good sense and caution, the paper whose character we are now considering could not have been presented to the witnesses, even for the purpose of refreshing their memory— much less to sufferits contents to go indirectly to the jury. It was drawn up weeks after the transaction it purports to set forth, and was drawn up, too, by one of the parties to the suit; and-if not in view of his mota, it was to perpetuate evidence obtained ex parte, and for his own benefit. It was obtaining, by a prepared and leading examination, the statement of unsuspecting witnesses. I will not, now, go so far as to say, that the paper was not properly allowed to be used, for the purpose of reviving, in the minds of the *238 witnesses, the facts contained in the paper. There seems to have been no objection made to it on that score. The objection is, that the witnesses were allowed to testify to a conversation, from a memorandum made by the plaintiff several weeks after the conversation; although the witnesses could not recollect the facts stated in the paper, after referring to it. The conclusion of the witnesses, as to-the truth of the paper, not verified by their memory at the time of the trial, went to the jury. And it is contended that this could be done, on the authority of the State vs. Rawls. That case goes thus far, to allow the writing itself to go to the jury,' in all cases where it is made by the witness, at the time of the fact, for the purpose of preserving the memory of it — although at the time of testifying he can recollect nothing further than that he accurately reduced the whole transaction to writing. The principle thus stated, with all its guards fairly maintained, is certainly unobjectionable. It has been adopted and approved by many eminent jurists in the United States. These are the guards against abusing the application of the principle in the case referred to. The facts must be noted at the time they are occurring, by a witness acting under the self-direction of his own mind, and for the purpose of perpetuating evidence. But where facts are noted by a party interested, and then suggested to witnesses, at the distance of weeks after they have transpired, what security would there be under the operation of such a practice? Alj the advantages of a cross-examination would be taken away, while all the mischief of leading questions would be introduced. All that an evasive or false witness would have to do, when he was under the ordeal of a cross-examination, would be to take refuge in his paper. And a witness of criminal facility would find his instructions in a paper of a friend, having all the characteristics of a leading examination. It is by no means certain that the witnesses before the court would have subscribed the paper prepared for them, if they had been subjected to the influence of an adversary examination ; they certified what they did not think at the time would be used as evidence at all. Certificates of the kind are given with too much *239 facility, and when given, they sometimes control the conscience of witnesses, under the' influence of pride of opinion, or from some fear that a different statement might affect .their veracity. A man may impose on himself the restraints which should bind him, but the duress of third persons, obtained by artful address or unsuspected contrivance, should meet with no countenance from a court of justice, that should encourage the freedom and independence of witnesses. The paper which the witnesses had to refer to in the case before us, may have had a very different influence on different witnesses. Some it would have instructed — others it would have embarrassed — whilst others again would not have had the moral courage to contradict its statements, although they may have been satisfied that they were not altogether correct. Those who make their own statements, for the purpose of preserving and maintaining truth, may be trusted under the influence of their own conscience; but when third persons, and those who are interested, prepare the memorial, suspicion will assail, and justice should repudiate it.
We think that the witnesses should not have been allowed to testify, from the contents of the paper presented to them, when they could not speak from their memory, when refreshed by it. And this is the unanimous opinion of the court.'
The motion for a new trial is granted.
Richardson, O’Neall, Evans, Wardlaw and Frost, JJ. concurred.